STANDARD OIL COMPANY OF TEXAS, a Corporation, Plaintiff,

v.

Walter M. CLARK, Cora Patterson Clark, J. R. Cranfill, Ruth Patterson Cranfill, Donald I. Dennis, Donald I. Dennis, Trustee, Reba Rudd Dennis, A. E. Dennis, Al A. Ruschaupt, Theron Dunn, Mrs. Willie E. Curtis, B. L. Woolley, H. T. Patterson, Effie J. Patterson, Robert B. Patterson, E. L. Foshee, W. W. Bradley, and Mrs. W. W. Bradley, Defendants.

Civ. A. No. 1011.

United States District Court
E. D. Texas, Sherman Division.
Jan. 26, 1955.

Reba Rudd Dennis, Donald I. Dennis, Trustee, A. E. Dennis, Al. A. Ruschaupt, Theron Dunn, Mrs. Willie E. Curtis, a widow, B. L. Woolley, H. T. Patterson and wife, Effie J. Patterson, Robert B. Patterson, E. L. Foshee, W. W. Bradley and wife, Mrs. W. W. Bradley, seeking a declaratory judgment that a certain oil, gas, and mineral lease owned by plaintiff (hereinafter described) be established and declared to be in full force and effect and that a cloud cast upon plaintiff's title by a lease to the defendant, B. L. Woolley, be, in all things, removed.

The facts are undisputed and may be summarized as follows: On February 7, 1945, by instrument recorded in Vol. 475, page 164, Deed Records of Grayson County, Texas, defendants, Walter M. Clark and wife, Cora Patterson Clark, and Ruth Patterson (now Ruth Patterson Cranfill), as lessors, executed and delivered to H. H. Coffield, as lessee, an oil, gas and mineral lease covering certain land in Grayson County, Texas, which is described in amendment to said lease dated April 24, 1946, recorded in Volume 505, page 201, Deed Records of Grayson County, Texas, as follows:

*First Tract:* 100 acres, more or less, being the same land described in a deed from J. J. Marshall to Cora Patterson, et al., dated December 5, 1933, recorded in Volume 369, page 634 of the Deed Records of Grayson County, Texas;

*Second Tract:* 25 acres, more or less, of the J. Jennings Survey, being same land described in deed to W. M. Clark and Cora Patterson Clark and Ruth Patterson, recorded in Volume 466, page 151, Deed Records of Grayson County, Texas. Plaintiff became the owner of this lease by virtue of an assignment from H. H. Coffield to plaintiff dated June 26, 1945.

The lease is what is commonly known as an "unless" lease, with a primary term of ten years from February 7, 1945. Paragraph 4 of said lease contains the following provision: "If drilling or mining operations are not commenced on

James E. Henderson, Sherman, Tex., James P. Lee, J. C. Hutcheson, III, Baker, Botts, Andrews & Shepherd, Houston, Tex., for plaintiff.

Ralph Elliott, Freels, Elliott & Nall, Sherman, Tex., for defendants Walter M. Clark and others.

Joe A. Keith, Keith & Kennedy, Sherman, Tex., for defendant B. L. Woolley. Alto B. Cervin, A. George Biggs, Dallas, Tex., for defendants Donald I. Dennis and wife Reba Rudd Dennis.

CECIL, District Judge.

This suit was brought by Standard Oil Company of Texas against Walter M. Clark and wife, Cora Patterson Clark, Ruth Patterson Cranfill and husband, J. R. Cranfill, Donald I. Dennis and wife,

said land on or before the 7th day of February, 1946, this lease shall then terminate as to both parties unless Lessee on or before said date shall pay or tender to Lessor, or to the credit of Lessor in Grayson County State Bank at Sherman, Texas, or any successor, the sum of One Hundred and Twenty-five and No/100 Dollars ($125.00) hereinafter called "rental", which shall extend for twelve (12) months from said date the time within which drilling or mining operations may be commenced. Thereafter, annually, in like manner and upon like payments or tenders, the commencement of such operations may be further deferred for successive periods of twelve (12) months each during the primary term."

Paragraph 5 of said lease contains the following provision: "If on any rental date there be neither operations in progress for the drilling of a well or mining or reworking operations anywhere on said land, nor production from any part thereof, this lease shall not terminate if Lessee on or before such date shall make or resume the payment or tender of rentals as herein set forth; * * *."

Paragraph 6 of said lease includes the following provision: "If Lessee shall, in good faith and with reasonable diligence, attempt to pay any rental, but shall fail to pay or incorrectly pay some portion thereof, this lease shall not terminate unless Lessee, within thirty (30) days after written notice of its error or failure, shall fail to rectify the same."

Paragraph 10 of said lease provides, in part, as follows: "Payments may be anticipated and made by Lessee before their due date, and no change of ownership, or right to receive any payments, hereunder, however accomplished, shall be binding on Lessee until after notice thereof shall have been furnished Lessee by the person claiming the benefit thereof, and then only with respect to payments thereafter made. Notice of sale or assignment shall consist of a certified copy of the recorded instrument accomplishing same; notice of change of ownership or right to receive such payments, accomplished in any other manner (for example, by reason of incapacity, death or dissolution) shall consist of certified copies of recorded documents and complete proceedings legally binding upon and conclusive of the rights of all parties. Until such notice shall have been furnished Lessee, as above provided, the payment or tender of all sums payable hereunder may be made in the manner provided herein precisely as if no such change in interest or ownership or right to receive payment had occurred. The kind of notice herein provided shall be exclusive, and no other kind, whether actual or constructive, shall be binding on Lessee."

All of the defendants, except B. L. Woolley, own or claim to own an interest in the mineral fee estate of a portion of the above-described land, and all of the defendants except those named as lessors in said lease claim under said lessors through conveyances executed subsequent to the date of said lease. The defendant, B. L. Woolley, is claiming a leasehold interest in the 100 acre tract described as First Tract, under a purported oil, gas, and mineral lease dated June 25, 1953, from Cora Patterson Clark and husband, Walter M. Clark and Ruth Patterson Cranfill and husband, J. R. Cranfill, as Lessors, to B. L. Woolley, as Lessee, recorded in Volume 729, page 271, Deed Records of Grayson County, Texas.

On December 18, 1947, the Clark defendants (Cora Patterson Clark and husband, Walter M. Clark, and Ruth Patterson Cranfill and husband, J. R. Cranfill) conveyed a ¼ interest in their mineral estate in the 100 acre tract to Donald I. Dennis, Trustee, and on August 6, 1951, conveyed another ¼ of their said undivided mineral interest to Donald I. Dennis, individually, and in 1948 the Clark defendants had conveyed ⅝ of their mineral interest in the 25 acre tract to the defendants, E. L. Foshee, W. W. Bradley, Mrs. W. W. Bradley, H.

T. Patterson, Effie J. Patterson, and Robert B. Patterson. Shortly after the payment of the 1952 rental, plaintiff received notice of the conveyance to Donald I. Dennis, Trustee, and to Donald I. Dennis individually.

The annual delay rental of $125 was paid to and received by the Clark defendants in the years 1946, 1947, and 1948, and in the summer of 1948 a well, which produced oil in commercial quantities, was brought in on the 25 acre tract, which well continued to produce for approximately two years, during which time royalties were paid to the defendants owning an interest in the 25 acre tract. In the summer of 1950 the well ceased to produce and in January, 1951, payment of delay rentals was resumed. At that time plaintiff instructed the depository bank to distribute $109.35 of the total payment to the Clark defendants and the remainder to the defendants who had acquired the 5/8 interest in the 25 acre tract.

By letter dated February 1, 1952, prior to the due date of delay rental on February 7, 1952, but after such rental had been forwarded to the depository bank, plaintiff received notice of the conveyance to Donald I. Dennis, Trustee, and Donald I. Dennis, and one of its employees, Hartman, a lawyer, was charged with the responsibility of changing plaintiff's records in order to reflect these transfers. In doing so, Hartman properly set out the interest Dennis had acquired, but erroneously placed the figure of $100 opposite his name, when such figure should have been $50, thus causing the record to show that the Clark defendants were entitled to only $9.38 of the rental, which was $50.00 less than their proper share. Accordingly when the next rental payment was made on January 13, 1953, the depository bank was instructed to credit $100 of that payment to Dennis, individually and as Trustee, and only $9.38 to the Clark defendants. Thus it appears that the correct amount of rental was deposited but an error in allocation was made, which resulted in an overpayment to Dennis and an underpayment to the Clark defendants. Neither the Clark defendants nor Dennis notified the plaintiff of this erroneous allocation nor did the Clark defendants refuse to accept from the depository bank the money order for $9.38, but on the contrary, took the money order and held it in their possession for a period of some five months. Hartman noticed the error in the allocations on April 30, 1953, and on the next day the plaintiff tendered an additional $50 to the Clark defendants, which they returned on June 5th, asserting that the lease had terminated as to their interest. This tender was repeated by the plaintiff, and the Clark defendants thereupon returned both the $50 and the $9.38 which they had received approximately five months before.

A jury was demanded and at the conclusion of the testimony each party filed a motion for an instructed verdict. The Court reserved decision upon these motions, and being of the opinion that the facts were undisputed and there were no controverted material issues for a jury's determination, discharged the jury.

It is the contention of the plaintiff that it is entitled to the relief sought in the complaint, because:

(a) There was no such failure to pay rentals in this case as would result in termination of the lease.

(b) By their conduct in accepting the money order for an insufficient amount, more than three weeks prior to the rental payment date, and thereafter remaining silent, the Clark defendants are estopped from contending that the lease was terminated, and

(c) The special provision providing for correction of good faith mistakes is a valid exception to the general provisions of the "unless" clause and prevents a termination of the lease under the facts in this case.

On the other hand, the defendants contend:

(a) That Section 6 in the lease, which permits the correction of good faith mistakes is invalid, because it is repugnant to and inconsistent with the provisions of the "unless" clause in the lease.

(b) That there is no basis upon which the principles of equitable estoppel can be brought to play in this case in order to excuse the error in payment of the rentals for the year 1953, and

(c) That the plaintiff did not exercise good faith and reasonable diligence in making the insufficient delay rental payment of $9.38 to the Clark defendants.

In addition to this Dennis contends that the lease, insofar as it covered the 100 acre First Tract, terminated by reason of the failure of the plaintiff to pay delay rentals during the years 1949 and 1950, while production was being had in commercial quantities from the 25 acre Second Tract.

First, considering the position of all of the other defendants, with the exception of the Clark defendants and Dennis, it appears that these defendants of whose interest plaintiff had notice, were paid rentals and accepted the exact amounts they were entitled to receive. This being true, I am of the opinion that the lease is clearly in force as to their interest. There remains for consideration the primary legal question in this case, which is whether or not as to the Clark defendants and Dennis the lease remains valid and effective.

Dennis, Trustee, acquired a ¼ undivided mineral interest in the First Tract by assignment from Lessors on December 18, 1947, and Dennis, individually, acquired another ¼ of said undivided mineral interest by assignment dated August 6, 1951. Notice was given to plaintiff by Dennis by letter dated February 1, 1952, of his interest, which was prior to the due date of the rentals on February 7, 1952, but after plaintiff had deposited in the depository bank the full amount of the 1952 rentals, with instructions to the Bank to distribute the rentals in the exact distributive shares, under which the rental had been paid prior to the production on the Second Tract.

Considering the rental situation insofar as the Clark defendants are concerned, it is apparent that prior to the rental payment of January 13, 1953, the Clarks had received from the depository bank $100 more than their share of the delay rentals paid prior to that date, which $100 rightfully belonged to Dennis. Although the Clark defendants deposited $50 to the credit of Stanley Dennis in the Grayson County State Bank at Sherman, Texas, this attempted accounting still left the Clark defendants in possession of $50 more rental than they were entitled to have. The erroneous payment of $9.38 in January of 1953, plus the $100 excessive rental received by the Clarks adds up to the exact amount of delay rental necessary to maintain the lease in effect until February 7, 1954. It is true that they received part of the rental too soon, but nonetheless the erroneous payment of $9.38 in January, 1953, did give to them all of the rental they were entitled to receive. The payment in January of 1953 to Dennis of $100 as delay rental for that year resulted in Dennis receiving twice as much rental as he was entitled to. Dennis has no legal basis of complaint simply because he received twice as much rental as he was entitled to.

If, on the first anniversary date of the lease, plaintiff had erroneously paid two years' rental to the Clark defendants, and this payment had been retained by them, I do not believe it could be seriously contended that the lease would have terminated as to their interests if no payment was made in the following year. See Link v. State's Oil Corporation, Tex.Civ.App., 229 S.W. 693, and Para. 10 of the lease.

█ The plaintiff contends that under the authority of cases such as Hunter v. Gulf Production Company, Tex. Civ.App., 220 S.W. 163, Gulf Production

Company v. Perry, Tex.Civ.App., 51 S.W. 2d 1107 (error refused), and Perkins v. Magnolia Petroleum Company, Tex.Civ. App., 148 S.W.2d 266, it has complied with the terms of the lease by depositing the total amount of the rental due in the named depository bank, and that it should not be penalized for the erroneous instruction as to allocation of the rentals issued to the depository bank, because this was simply a voluntary act done for the convenience of the Lessors and their assigns. Under the recent holdings of the Texas Courts, it seems to be now the rule that leases will be construed, where possible, in such a manner as to avoid the termination of the rights of the Lessee, and it is my opinion that this lease should not be terminated because of an erroneous instruction as to allocation of the rental, when the plaintiff had deposited the full amount of the rental due in the depository bank, which was by the terms of the lease the agent of the Lessor and his assigns. I do not think that there should be read into the lease a requirement that the Lessee should have issued, at its peril, correct instructions as to the manner in which the rental payments should be allocated. See Decker v. Kirlicks, 110 Tex. 90, 216 S.W. 385; Bouldin v. Gulf Production Company, Tex.Civ.App., 5 S.W.2d 1019; Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W.2d 564; Glasscock v. Sinclair Prairie Oil Company, D.C.S.D.Tex., 87 F.Supp. 915, 918, affirmed, 5 Cir., 185 F.2d 910, St. Louis Royalty Company v. Continental Oil Company, 5 Cir., 193 F. 2d 778. I conclude that the Clark defendants, having received the full amount of rental to which they were entitled, and Dennis having received twice as much rental as he was entitled to, the lease is still valid and in force.

I further hold that the contention of Dennis that the failure of plaintiff to pay rentals upon the First Tract during the period of commercial production upon the Second Tract invalidated the lease insofar as the First Tract was concerned, is without merit.

If I am in error in the above conclusions, there yet remains another basis upon which I think this lease should be sustained.

The Clark defendants received the $9.-38 rental payment several weeks prior to the 1953 rental date, and they were fully aware that insofar as the 1953 payment was concerned they had received less than their proper share. They retained the money order for $9.38 for a period of approximately five months. They did not notify the plaintiff that there had been an error in the allocation of the rental, they did not refuse to accept the money order from the Bank, nor did they send the money order back to the plaintiff promptly. It appears that if any of these courses of conduct had been undertaken, the error in the allocation would have been speedily disclosed and steps taken to correct it.

I believe that Mitchell v. Simms, Tex. Com.App., 63 S.W.2d 371, and the leading case upon the subject, Humble Oil & Refining Company v. Harrison, 146 Tex. 216, 205 S.W.2d 355, 361, compel the conclusion that the principles of equitable estoppel prevent the Clark defendants from now complaining of the erroneous allocation of the delay rentals. The defendants contend that these cited authorities are not applicable, because in making the allocation, the plaintiff did not act in good faith, and was negligent. They invoke, in effect, the general rule that a person may not predicate an estoppel in his favor for the purpose of obtaining the benefit of his own lack of good faith, fraud or wrongful conduct, 31 C.J.S., Estoppel, § 75, p. 281.

The undisputed facts in this case do not reveal any lack of good faith or dishonesty of intent on the part of the plaintiff, but show only what appears to be an honest mistake in the allocations of the rentals. I am of the opinion that the following language from Harrison's case, supra, controls here:

"Where, as in this case, the lessee has in good faith made a mistake in

construction of the lessors' partial conveyance of their interests, and lessee has made a payment in accordance with the construction, of which the assignee has notice, the duty rests on the assignee to notify the lessee of this mistake so that the lessee will have an opportunity to make a proper payment of the delay rentals. Where the assignee, instead of giving the lessee such notice, remained silent, we hold that the assignee is estopped to assert that the lease has terminated as to his interest on the ground that the lessee has failed to pay to him a sufficiently large share of the delay rentals."

As against the application of the principles of estoppel the defendants rely upon Empire Gas & Fuel Co. v. Saunders, 5 Cir., 1927, 22 F.2d 733, and Coker v. Benjamin, Tex.Civ.App., 1935, 83 S.W.2d 373. In the Empire Gas & Fuel Co. case the Court said, "The lessor was under no duty to notify the lessee of a failure to pay the correct amount due as rent, and had the right to remain silent." [22 F. 2d 735.] My reading of Harrison's case convinces me that this broad statement no longer reflects the Texas law.

I, therefore, hold that the principles of equitable estoppel apply against the Clark defendants under the facts in this case.

The plaintiff contends that Section 6 of the lease is determinative, and it having complied with the obligations of such Section, that the lease should not be held to have terminated. The provisions of Section 6 have been set forth hereinabove.

The defendants contend that this clause is repugnant to, and inconsistent with, the "unless" clause in the lease, which is set out in Section 4 thereof, and rely primarily upon Clovis v. Carson Oil & Gas Company, D.C., 11 F.Supp. 797 and Lewis v. Grininger, Okl., 179 P.2d 463, as supporting their view. These cases do cause me to have considerable doubt as to the validity of Section 6 of

the lease under the undisputed facts here adduced. However, due to the holdings previously made in this memorandum decision, I do not find it necessary to pass upon the question of the validity of Section 6.

For the reasons hereinabove set forth, I find that the plaintiff should have the relief prayed for in its complaint, and that a judgment should be entered declaring the lease to be in full force and effect and quieting the plaintiff's title to the same, and that plaintiff should recover all costs of Court in this behalf incurred. Let the attorneys for the plaintiff prepare and present a judgment in accordance with this memorandum decision, which is pursuant to Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A., filed in lieu of findings of fact and conclusions of law.